## No. 2282.

## GULF, COLORADO & SANTA FE RAILWAY COMPANY *v.* L. J. WILSON.

2. NEGLIGENCE—TELEGRAPH COMPANY.—The failure of one who pays a telegraph company to transmit a message, to have the same repeated, will not exempt the company from damages resulting from its failure through negligence to have the message delivered. And this, though the printed matter on the blank furnished by the company and on which the message was written, contains a stipulation that the company will only be liable for the amount received for sending the message, if delay should occur in its delivery, unless the message be repeated. The rule is otherwise when the action against the company is for error committed in transmitting the message.

1. NEGLIGENCE.—Negligence in a telegraph company, without regard to the degree of such negligence, will render such company liable for actual damage resulting from its failure to deliver a telegraph message.

3. PRACTICE.—An assignment of error should be copied in a brief in connection with the proposition predicated on it.

APPEAL from Washington. Tried below before the Hon. I. B. McFarland.

The opinion states the case. The verdict was in favor of appellee for one thousand dollars.

*Garrett, Searcy & Bryan,* for appellant.

The brief of counsel reached the Reporter in such a mutilated condition that the propositions and authorities can not be given.

*Bassett, Muse & Muse,* for appellee.    1. The stipulation relied on by the defendant was an attempt to secure itself from lia-

bility for the negligent acts of its agents and employes, and was against public policy and void. (Western Union Telegraph Company v. Blanchard, 68 Georgia, 309; Hibbard v. Western Union Telegraph Company, 33 Wisconsin, 558, 564 and 565; Tyler v. Western Union Telegraph Company, 60 Illinois, 421 and 432; True v. International Telegraph Company, 60 Maine, 9, 19 and 20; Bartlett v. Western Union Telegraph Company, 62 Maine, 209 and 218; Candee v. Western Union Telegraph Company, 34 Wisconsin, 471.) Such is conceded to be the preponderance of authority in 8 Corp. Cases, page 44, note cited by appellant.

2. The defendant's right to limit its responsibility is restricted to such stipulations as are needful to guard against errors incident to the nature of the business, and does not extend to shelter it from responsibility for losses due to the negligence of its agents and employes. The messages having been correctly transmitted and received at the office of their destination, the fact that the sender did not pay to have them repeated, constitutes no defense to this action for their non-delivery. (Western Union Telegraph Company v. Fenton, 52 Indiana, 1, 5 and 6; Western Union Telegraph Company v. Graham, 1 Col., 230, 234 and 235 (same case, 9 Am. Rep., 136), and cases cited; Western Union Telegraph Company v. Tyler, 74 Illinois, 168, 170, 171 and 172, and cases cited.

ACKER, JUDGE. Appellee brought this suit to recover damages for the failure to deliver a telegraph message sent by his wife from Sealy, Texas, to him at Brenham, informing him of the serious illness of their child and requesting his presence at Sealy. The message was delivered to appellant's agent at Sealy about 2:30 p. m., and the charge for transmitting and delivering was prepaid. The distance from Sealy to Brenham is about thirty miles. The message was received at Brenham a few minutes after it was delivered to appellant's agent at Sealy. The message was not repeated. Appellee was at his home in Brenham all afternoon of the day the message was sent, but it was not delivered to him until in the afternoon of the next day, after the child was dead, when he called for it at appellant's office in Brenham. The message was written on a blank, furnished by appellant for that purpose, at the top of which, and preceding the message, there was printed matter containing the following stipulation:

"It is agreed between the sender of the following message

and this company, that said company shall not be liable for mistakes or delays in the transmission or delivery, or for non delivery, of any unrepeated message, whether happening by the negligence of its servants or otherwise, beyond the amount received for sending the same."

In regard to this contract, the court charged the jury: "Under such a contract the defendant, its agents and employes would be bound to such care and diligence as were reasonably adequate to a faithful discharge of the obligation assumed; and the failure to deliver the message with reasonable diligence—that is, with such care and diligence as a prudent man would exercise in a matter of equal importance to himself—if that fact has been shown, makes a prima facie case of negligence, which would cast on the defendant the burden of proof to justify, excuse or mitigate such an apparent breach of duty; and the fact that the sender did not pay to have the message repeated constitutes no defense to an action for the failure to deliver it to the party to whom it was addressed."

This charge is complained of as erroneous, because, as contended here, "the appellant had the right to limit its liability by contract, and the court erred in instructing the jury that the fact that the sender did not pay to have the message repeated constitutes no defense to an action for the failure to deliver it to the party to whom it was addressed."

Treating the conditions or stipulations printed upon the blanks furnished by appellant, and upon which it requires all messages to be written, as a contract, we are to determine whether the stipulation here invoked is reasonable and binding to the extent of affording protection to appellant against damages resulting from the negligence of its agents and employes in failing to deliver the message.

If the plaintiff in this suit was seeking to recover damages for error committed in transmitting the message, we would be relieved of all difficulty upon this question; for, while the authorities are numerous, very respectable and well supported by sound reason that hold such stipulations void, this court has held that, where the action is brought to recover damages for error in transmitting, the failure of the sender to have the message repeated exonerates the company from liability for damages, unless the injury was caused by the misconduct, fraud or want of due care on the part of the company, its servants or agents. (Western Union Telegraph Company v. Mill, 57 Texas, 283;

Womack v. Western Union Telegraph Company, 58 Texas, 176.) But we can conceive no reason in support of the requirement that the message shall be repeated, where the injury results from a failure to deliver, and we therefore hold, with the great weight of authority, that the condition or stipulation here insisted upon as an exemptien of the company from liability for damages resulting from a failure to deliver is not reasonable nor valid nor binding. (Hibbard v. Tel. Company, 33 Wisconsin, 564; Tel. Company v. Graham, 1 Colorado, 204; Tel. Company v. Fenton, 52 Indiana, 5, 6; True v. Tel. Company, 60 Maine, 18; Burney v. Tel. Company, 18 Maryland, 341; Bartlett v. Tel. Company, 62 Maine, 217; Tel. Company v. Blanchard, 68 Georgia, 309; 28 Georgia, 543; 58 Georgia, 433; 29 Maryland, 222; 27 Iowa, 432.)

That such condition or stipulation, in so far as it undertakes to exempt the company from liability for negligence of servants and employes, is void, is too well settled to require discussion here. (See authorities collated in note on page 44, 8 American and English Corporation Cases.) Upon the question of negligence and the degree of diligence that would exonerate appellant from liability, the court gave the following instruction:

"The question of diligence is one to be determined by the jury from all the facts and circumstances in evidence, and if you believe from the evidence that the defendant through its messenger at Brenham, or otherwise, used such care and diligence as a prudent man under like circumstances would use in his own behalf to find the plaintiff and deliver the message, and failed through no fault of defendant company, or its agents or employes, then you will find for the defendant." Considered in connection with other portions of the charge relating to the same question, we think this instruction sufficient, and that the court did not err in refusing to give the special charge requested by appellant. We can not perceive how appellant's rights could be affected injuriously by the jury finding it guilty of a particular degree of negligence, unless it was made to appear that the finding of gross negligence influenced the jury in fixing the amount of damages, and it is not contended by any proper assignment of error that it did. The question of negligence was for the jury, and if they found that the failure to deliver the message was caused by the negligence of appellant's servants, such negligence, without regard to its degree, would make appellant liable for actual damages in such amount as the jury

might find from all the facts and circumstances in evidence. (R. R. Co. v. Hewitt, 67 Texas, 478.)

There was evidence upon which the jury might well find negligence, and this court will not disturb a verdict unless it is unsupported by evidence, or is clearly against the great preponderance of the evidence; especially so, when there is nothing in the record indicating that the jury were affected by any improper motive or influence in returning their vercict.

After appellee had testified in his own behalf, on cross examination he was interrogated by counsel for appellant with much particularity in regard to the places he had lived at, and the different occupations he had pursued during the six years he had resided in Brenham, and the fact was elicited that he had conducted a grocery business in his own name for about eight months in the town of Brenham. On re-examination he testified, without objection, that while he was engaged in the grocery business he kept and used printed cards, letter heads and envelopes, and produced specimens of each, which were offered in evidence in his behalf. Appellant objected to the introduction of the cards, letter heads and envelopes, upon the ground that, "the same were not competent evidence, and impertinent and irrelevant to any issue in the cause." The objection was overruled, and appellant insists that this ruling was error. The witness having testified without objection, that he kept and used the cards, letter heads and envelopes, we do not think the ruling here complained of could have operated prejudicially to the rights of appellant.

Appellants sought to excuse the non delivery of the message upon the theory that appellee was an obscure person, but little known, and who could not be found by repeated inquiries for him by its messenger. The most material question in the case was whether appellant's servants had exercised due diligence in attempting to deliver the message, or whether their failure to deliver it was due to their negligence. Pertinent to this question were the inquiries as to appellant's places of residence and the business he had been engaged in, in Brenham. The evidence showed that the means ordinarily used to advertise and make known one's residence and business had been employed by appellee, and tended to show that, had appellant's servants used the diligence demanded by the exigency indicated in the message, they could have found some one who would have

given information by which they would have been enabled to deliver the message.

The record contains nine assignments of error, none of which are presented in the brief. The brief is made upon five propositions, without reference to the order or numbers of the assignments of error, several of which are too general to require consideration. If the rules do not specifically require that assignments of error relied upon shall be inserted and presented in the brief, they certainly contemplate that such shall be done. In this case we have had much difficulty in determining upon which assignment of error each of the several propositions was predicated, but have considered every question that we deem at all material, and conclude that the judgment of the court below should be affirmed.

*Affirmed.*

Opinion adopted February 14, 1888.